**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *IN RE* NYC BUS TOUR ANTITRUST LITIGATION | Master Case File No.<br>13-CV-0711 (ALC)(GWG)<br>**RELATED TO ALL CASES**<br><br>**ECF Case**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT WITH DEFENDANTS**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ...............................................................................................4

        A.      The Litigation................................................................................4

        B.      Settlement Negotiations ...............................................................5

        C.      The Settlement Agreement ...........................................................6

                1.      Consideration and Settlement Class.................................6

                2.      Release and Opt-Outs ......................................................7

                3.      Costs, Fees and Distribution Plan ...................................7

III.    ARGUMENT .....................................................................................................8

        A.      The Proposed Settlement Warrants Preliminary Approval..........8

                1.      Legal Standard Governing Preliminary Approval ..........8

                2.      The Proposed Settlement is Procedurally Fair..............10

                3.      The Proposed Settlement is Substantively Fair ............11

        B.      The Proposed Settlement Class Should Be Certified................14

                1.      The Settlement Class Meets the Requirements of Rule 23(a) ..................15

                2.      The Settlement Class Meets the Requirements of Rule 23(b)(3) .............18

                3.      Proposed Class Counsel Satisfy Rule 23(g)................20

        C.      Notice to the Class .....................................................................20

        D.      The Proposed Distribution Plan is Reasonable ........................22

IV.     CONCLUSION..............................................................................................24

**<u>TABLE OF AUTHORITIES</u>**

<u>Cases</u>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................ 15, 18, 19, 21

*Capsolas v. Pasta Res. Inc.*,
    No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012)..................................... 11

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)................................................................................ 12, 14

*Clark v. Ecolab, Inc.*,
    Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729 (S.D.N.Y. Nov. 27,
    2009) ................................................................................................................ 8, 9

*Clem v. Keybank*,
    No. 13 Civ. 789, 2014 WL 1265909 (S.D.N.Y. Mar. 27, 2014) ........................... 9, 11, 12

*Currency Conversion*,
    263 F.R.D. at 123 ................................................................................................ 13

*D'Alauro v. GC Servs. Ltd. P'ship*,
    168 F.R.D. 451 (E.D.N.Y. 1996) ............................................................................ 19

*DeJulius v. New England Health Care Emps. Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ............................................................................... 14

*Engel v. Scully & Scully, Inc.*,
    279 F.R.D. 117 (S.D.N.Y. 2011) ............................................................................ 15

*In re American Bank Note Holographics, Inc.*,
    127 F.Supp.2d 418 (S.D.N.Y.,2001)....................................................................... 24

*In re Buspirone Patent Litig.*,
    210 F.R.D. at 58 ................................................................................................. 19

*In re Cardizem CD Antitrust Litig.*,
    391 F.3d 812 (6th Cir. 2004) ................................................................................ 14

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995)......................................................................... 14

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)................................................................................. 17

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. M 02-1486, 2006 WL 1530166 (N.D.Cal. June 5, 2006) ......................................... 16

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    256 F.R.D. 82 (D. Conn. 2009).................................................................................. 18

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... passim

*In re Imprelis Herbicide Marketing, Sales Practices & Prods. Liab. Litig.*,
    296 F.R.D. 351 (E.D. Pa. 2013)................................................................................ 22

*In re Indep. Energy Holdings*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ............................................................................. 15

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................................... 10

*In re Initial Pub. Offerings Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................... 22

*In re Lloyds' Am. Trust Fund Litig.*,
    2002 WL 31663577  (S.D.N.Y. Nov. 26, 2002)....................................................... 23

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99, 102 (S.D.N.Y. 1997) ....................................................................... 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................................. 19

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................. 10

*In re Nigeria Charter Flights Contract Litig.*,
    233 F.R.D. 297 (E.D.N.Y. 2006) ............................................................................. 19

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................. 10, 22, 23

*In re Playmobil Antitrust Litig.*,
    35 F. Supp. 2d at 249 .............................................................................................. 19

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................................... 8, 12, 14

*In re Rubber Chems. Antitrust Litig.*,
    232 F.R.D. 346 (N.D.Cal. 2005)............................................................................... 16

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 21, 22

*In re Traffic Executive Ass'n*,
627 F.2d 631 (2d Cir. 1980) ...................................................................................... 9

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) .................................................................................... 17

*In re Vitamin C Antitrust Litig.*,
No. 06-MD-1738, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................... 22

*In re Vitamins Antitrust Litig.*,
2000 WL 1737867  (D.D.C. Mar. 31, 2000) ........................................................... 23

*In re Vivendi Universal, S.A.*,
242 F.R.D. 76 (S.D.N.Y. 2007) ............................................................................... 22

*Jermyn v. Best Buy Stores, L.P.*,
No. 08 Civ 00214, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ............................ 22

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................... 22

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1998) ..................................................................................... 8

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................... 9, 11

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ............................................................................... 16, 17

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ............................................................................................. 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ........................................................................... 8, 12, 20

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ................................................................................. 14, 15

<u>Statutes</u>

15 U.S.C. § 1 ............................................................................................................... 4

Rules

Fed. R. Civ. P. 23 ................................................................................................. 21

Fed. R. Civ. P. 23(a) ............................................................................................ 17

Fed. R. Civ. P. 23(a)(1) ....................................................................................... 15

Fed. R. Civ. P. 23(a)(2) ....................................................................................... 16

Fed. R. Civ. P. 23(a)(3) ....................................................................................... 17

Fed. R. Civ. P. 23(a)(4) ....................................................................................... 17

Fed. R. Civ. P. 23(b)(3)................................................................................. passim

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 20

Fed. R. Civ. P. 23(e) ............................................................................................ 20

Fed. R. Civ. P. 23(e)(1) ....................................................................................... 20

Fed. R. Civ. P. 23(g) ........................................................................................ 6, 20

Other Authorities

6 Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002) ....... 9, 16, 18, 21

Plaintiffs Natasha Bhandari and Tracey L. Nobel ("Class Plaintiffs," or "Plaintiffs"), individually and on behalf of the putative Class of purchasers in this action (the "Settlement Class," or "Class"), have entered into an agreement (the "Settlement") with defendants Twin America, LLC, Coach USA, Inc., International Bus Services, Inc., CitySights LLC and City Sights Twin, LLC ("Defendants").[1]   Plaintiffs respectfully move the Court for an order preliminarily approving the Settlement, certifying the Settlement Class, and appointing Plaintiffs as class representatives and Susman Godfrey LLP as class counsel for purposes of the Settlement, approving the form and manner of providing notice of the Settlement to the Class, and setting a hearing at which the Court will consider final approval of the Settlement, final approval of a distribution plan, and Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.   Because the Settlement Agreement was negotiated at arm's length by experienced counsel and is reasonable and appropriate, Plaintiffs respectfully request the Court's preliminary approval.

## I.   <u>INTRODUCTION</u>

Plaintiffs have reached an agreement with Defendants to settle this Action in exchange for a $19 million cash payment by Defendants.   By any measure, the proposed Settlement represents an outstanding result.   Defendants operate hop-on, hop-off bus tours in New York City—tours where a consumer can hop on a tour bus, hop off at a stop of interest (such as the Empire State Building) and then hop back on the bus to continue the tour.   In 2009, Defendants created a joint venture from two entities that Plaintiffs allege were previously fierce competitors. Plaintiffs allege that this joint venture, and other actions, violated the antitrust laws in a manner that caused consumers to pay an overcharge of $5 or more per ticket for Defendants' hop-on,

---

[1] Unless otherwise defined, all Capitalized Terms in this memorandum have the same meaning as set forth in the Settlement Agreement.

hop-off tours during the Class Period.  The United States Department of Justice and the New York Attorney General (the "Government Entities") have similarly alleged that the joint venture violates the antitrust laws in an action that is still pending before this Court, which seeks injunctive and other equitable relief (the "Government Action").  If approved by the Court, the $19 million will provide substantial relief to Class Members who could not justify the expense of bringing individual claims, and will supplement any relief that the Government Entities may obtain in the Government Action.  If any settlement funds are unclaimed by Class Members, the remainder of the funds will be provided to the Government Entities.  If the Settlement is finally approved and a final judgment is entered, no funds will be returned to Defendants under any circumstances.

The substantial settlement is the direct result of the significant efforts undertaken by Plaintiffs and their counsel in prosecuting and settling this action.  Among other things, Plaintiffs reviewed more than 500,000 pages of documents and several gigabytes of transaction data, briefed class certification, and participated in 29 depositions—including the depositions of senior current and former employees of Defendants.  Significantly, the Settlement was reached after fact discovery was nearly complete, and only after protracted, arm's-length settlement negotiations, including negotiations facilitated first by Judge Gorenstein and later by Antonio Piazza, an experienced and highly respected mediator.

The significant benefit the proposed Settlement will provide to the Class, if approved, is particularly noteworthy when considered against the risk that the Class might recover less (or nothing) if the action were litigated through dispositive motions, trial, and any appeals that would follow, a process that could last many months, or even years.  For example, although Plaintiffs allege that Defendants' merger gave them sufficient market power to raise and sustain

prices above a competitive level, Defendants vigorously dispute, among other issues, that there is any identifiable market, that the prices are supracompetitive, or that there are any barriers to entry into the alleged market.

Plaintiffs also face risks in establishing damages. Defendants have vigorously contested the conclusions of Plaintiffs' damages expert in quantifying the alleged overcharge, and argue that relevant benchmarks show that the prices of Defendants' post-joint-venture hop-on, hop-off tours have been below the prices that the benchmarks indicate would have existed without the joint venture. Plaintiffs dispute this argument.

The proposed Settlement, if approved, will enable the Class to recover a very significant sum while eliminating the risk that Defendants would prevail at class certification, summary judgment, trial, or in subsequent appeals. At the final approval hearing (the "Settlement Hearing"), the Court will have before it more extensive motion papers submitted in support of the Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the action. At this time, Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement may be disseminated to the Class and the Settlement Hearing may be scheduled.

Plaintiffs respectfully request that this Court enter the proposed Order Preliminarily Approving Class Action Settlement ("Preliminary Approval Order"), which has been agreed upon by the Parties, a copy of which is attached as Exhibit 1 to the Notice of Motion. The Preliminary Approval Order will: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the Class, appoint Plaintiffs as class representatives and their counsel, Susman Godfrey LLP, as Class Counsel, for purposes of the Settlement only; (iii)

approve the form and manner of giving notice to the Class; and (iv) set a date for the Settlement Hearing at which the Court will consider final approval of the Settlement, final approval of a distribution plan, and Counsel's application for attorneys' fees, expenses and incentive awards to Plaintiffs.

## II.   BACKGROUND

### A.   The Litigation

On December 11, 2012, the United States of America and State of New York filed an antitrust complaint against Defendants in this Court.  *See United States v. Twin America, LLC*, No. 12-CV-8989.  Since then, individual plaintiffs including Ms. Bhandari and Ms. Nobel have filed five different class action complaints against defendants.  *See Bhandari v. Twin America*, No. 13-cv-0711; *Hanson vs. Twin America*, No. 12-cv-9066; *Nobel v. Twin America*, No. 12-cv-9128; *Hinton vs. Twin America*, No. 12-cv-9175; and *Mercado v. Twin America*, No. 13-cv-1973.  In its Order of April 5, 2013 (Dkt. # 36), the Court appointed Susman Godfrey LLP to serve as Interim Co-Lead Counsel for the plaintiff Class.  In its Order of April 24, 2013 (Dkt. # 38), this Court consolidated the foregoing class actions under Docket No. 13-cv-0711 for all purposes, including trial.

The current consolidated complaint (Dkt. # 83) alleges that Defendants engaged in a *per se* unlawful conspiracy to fix prices above the market rate, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  The complaint also alleges monopolization of the relevant market in violation of Section 2 of the Sherman Act, *id*. § 2, and an illegal merger in violation of Section 7 of the Clayton Act, *id*. § 18.  Between May 2013 and February 2014, Plaintiffs served a total of seven sets of document requests and one set of interrogatories on Defendants.  Between July 2013 and February 2014, Plaintiffs served a total of 19 third-party subpoenas, calling for both documents and deposition testimony.  Plaintiffs received and reviewed over 500,000 documents

from these entities and several gigabytes of transactional data.  *See* Declaration of William Christopher Carmody In Support of Motion for Preliminary Approval of Settlement ("Carmody Decl."), ¶ 8.

On December 6, 2013, Plaintiffs commenced merits depositions.  To date, Plaintiffs have taken or defended 29 depositions, many in cooperation with the United States Department of Justice and the New York Attorney General.  These included defenses of Plaintiffs' proposed class representatives, economic expert, and declarant regarding class notice and administration, as well as depositions of Defendants' employees, officers, and corporate designees, and multiple third parties subpoenaed by Plaintiffs, Defendants, and the Government Entities.  *Id.*

On November 4, 2013, Plaintiffs filed a motion for class certification, which was supported by a declaration from an economic expert and a declaration on the feasibility of class notice and administration.  (Dkt. # 70-77).  Defendants opposed that motion on January 10, 2014, including a declaration of their own expert disputing Plaintiffs' conclusions concerning class certification, and Plaintiffs filed their reply brief on February 26, 2014.  (Dkt. # 97-98).  Fact discovery was scheduled to end on April 28, 2014.

> **B.**   **Settlement Negotiations**

Settlement discussions began last year with several informal discussions between the parties.  *See* Carmody Decl. ¶¶ 5-6.  On December 12, 2013, Judge Gorenstein held a Settlement Conference.  *Id.* ¶ 6; Dkt. # 88.  Prior to that conference, the parties submitted letters to the Court outlining their positions on the merits and for settlement.  The parties exchanged demands and offers both before and during that conference.

After engaging in further direct discussions, the parties hired a private mediator, Antonio Piazza, to facilitate further discussions.  *Id.* ¶ 4.  Mr. Piazza is the principal of Mediated Negotiations, and has been involved with the settlement of over 4,000 cases since 1981,

including numerous consumer class actions filed in federal court.  *See* Declaration of Antonio Piazza In Support of Motion for Preliminary Approval of Settlement ("Piazza Decl.") ¶ 2.  Mr. Piazza is one of the most highly respected and competent mediators in the country.  On March 12, 2014, Mr. Piazza conducted a mediation between the parties in San Francisco.  *Id.* ¶ 3.  In advance of the mediation, counsel for the parties submitted detailed mediation statements setting forth their positions on the key liability and damages issues.  *Id.* ¶ 4.  After a spirited, full-day mediation, the parties reached an agreement, which was memorialized in a written term sheet that contained the terms of this Settlement.  The mediator effectively assisted the parties in coming to a fair and equitable resolution despite the rival positions taken by opposing counsel and their clients.  Mr. Piazza believes that the proposed $19 million settlement is fair and reasonable, and is a highly successful result for members of the proposed Class.  *Id.* ¶ 10.

> **C.**    **The Settlement Agreement**

> **1.**    **Consideration and Settlement Class**

Defendants have agreed to pay $19,000,000 in exchange for dismissals with prejudice and a release of claims.  Carmody Decl., Ex. 1.  No unclaimed funds will revert to Defendants; instead, any residual funds will be given to the Government Entities.  *Id.* ¶ 19.

The Settlement defines the settlement Class as:

> [A]ll persons who, or entities that, purchased Defendants' "hop-on, hop-off" bus tours in New York City from February 1, 2009, until the date of the Preliminary Approval Order (the "Class Period").  Excluded from the Class are Defendants, their present and former parents, subsidiaries, affiliates, and employees.

*Id.*, Ex. 1 at ¶ 1(e). Under the terms of the Settlement, Defendants stipulate for purposes of settlement only that this Class should be certified under Rule 23(b)(3), and that Susman Godfrey LLP should be appointed as class counsel pursuant to Rule 23(g).  *Id.* ¶ 4.

### 2.      Release and Opt-Outs

Upon final approval of the Settlement, Plaintiffs and Class Members will release all claims they have against Defendants that relate to the claims asserted in the lawsuit and "arise out of, are based upon or are related to the allegations, transactions, facts (including allegations of anticompetitive conduct with respect to any acquisition of Defendants' hop-on, hop-off bus tours by Class Members during the Class Period), matters or occurrences, representations or omissions involved, set forth, or referred to in the First Amended Consolidated Class Action Complaint in the Action."  *Id.* Ex. 1 ¶ (cc).  Specifically excluded from the definition of "Class Member" are those who "timely and validly excluded themselves from the Class in accordance with the procedure to be approved by the Court."  *Id.* ¶ 1(f).

### 3.      Costs, Fees and Distribution Plan

The Settlement Agreement provides that a portion of the Settlement Amount may be used for Notice and Administration costs of the Settlement.  *Id.* ¶ 16.  Plaintiffs intend to use this portion of the Settlement Amount for the distribution and administration of notice and a separate claim form, and include such costs related to: (1) creation and distribution of notice to potential Class Members, (2) publication of notice and/or claim forms to potential Class Members, (3) designing, mailing of, and administration of a separate claim form to potential Class Members, and (4) administration of the notice and allocation process for this case.

The Settlement Agreement also provides that "Class Plaintiffs' Counsel may, at their discretion and election, choose to submit an application or applications to the Court (the 'Fee and Expense Application') for distributions to them from the Gross Settlement Fund, for an award of attorneys' fees or reimbursement of expenses incurred in connection with prosecuting the Action, and for an award of an incentive compensation to the Class Plaintiffs, not to exceed $20,000 for each Class Plaintiff, for their efforts in prosecuting this case."  *Id.*  Class Counsel

will do so at least 20 days before the objection deadline for Class Members in connection with this Settlement.  Any Fee and Expense Award will be paid from the Gross Settlement Fund.  *Id.* ¶¶ 16, 22.

The Distribution Plan, as set forth in the notice papers, will allocate up to $20 as a recovery for each class member's qualifying ticket purchase, reduced on a *pro rata* basis if the submitted claims exceed the net settlement fund.  *See* Long Form Notice, Wheatman Decl., Ex. 6, Question 9.

## III.    ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval

#### 1.    Legal Standard Governing Preliminary Approval

The settlement of complex litigation is strongly favored.  The Second Circuit is "mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (internal quotation marks and citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

The approval of a proposed class action settlement is a matter of discretion for the trial court.  *See Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1998).  "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties."  *Clark v. Ecolab, Inc.,* Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted).  "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ."  *Id.* (internal quotation marks omitted).

Preliminary approval, which is what Plaintiffs seek here, is the first step in the settlement process.  Preliminary approval "simply allows notice to issue to the class and for Class Members to object to or opt-out of the settlement."  *Clem v. Keybank*, No. 13 Civ. 789, 2014 WL 1265909, at *1 (S.D.N.Y. Mar. 27, 2014).  "After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input."  *Id.*

"Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties."  *Id.* (quoting *Clark*, 2009 WL 6615729, at *3).  To grant preliminary approval, "the court need only find that there is 'probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness.'"  *Id.* (quoting *In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980)).  If, after a preliminary evaluation of the proposed settlement, the court finds that it "appears to fall within the range of possible approval," the court should order that the class members receive notice of the settlement.  *Id.* (quoting *Clark*, 2009 WL 6615729, at *3 (citing Herbert & Conte, *Newberg on Class Actions* (4th ed. 2002) ("*Newberg*") § 11.25)); *see Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) ("[A] full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval.").

In conducting a preliminary approval inquiry, a court considers both the negotiating process for the settlement (procedural fairness) and the settlement's substantive terms (substantive fairness).  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (citations omitted).  Preliminary approval is granted so long as the settlement was arrived at through a fair process and the terms of the settlement are within the "range of

*possible* approval." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (emphasis added) ("*NASDAQ II*"); *see In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) ("Where the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." (quoting *NASDAQ II*, 176 F.R.D. at 102)).

### 2.      The Proposed Settlement is Procedurally Fair

The negotiations that resulted in the proposed settlement were fairly conducted by highly qualified counsel who endeavored to obtain the best possible result for their clients and the Settlement Class.  *See* Carmody Decl. ¶¶ 5-9.  When counsel for the parties engage in diligent arm's-length negotiations, a settlement is generally entitled to a presumption of fairness.  *See In re NASDAQ Mkt. Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ III*").  Moreover, when a settlement is the product of negotiations between experienced and informed counsel, courts tend to give counsel's opinion considerable weight because they are closest to the facts and risks associated with continuing the litigation.  *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).

The Court previously found that Interim Lead Counsel have the requisite qualifications and experience to lead this litigation on behalf the proposed Settlement Class.  (Dkt. # 36).  The terms of the Settlement Agreement were negotiated at arm's length through extensive meetings and discussions over the course of several months, and included two mediation sessions—first with Judge Gorenstein and then with a highly experienced private mediator.  *See* Carmody Decl., ¶¶ 4-6; Piazza Decl. ¶ 3.  During this period of time, there were numerous telephone calls and email exchanges regarding the settlement terms.  *See* Carmody Decl. ¶ 6.  The discussions were

meaningful and informed as they occurred only after the parties had reviewed hundreds of thousands of pages of documents, conducted dozens of depositions, and briefed class certification.   Aided by this experience and two rounds of mediation briefing, Interim Lead Counsel analyzed all the contested legal and factual issues posed by the litigation to advocate for a fair settlement that serves the best interests of the Settlement Class.  *See id*. ¶¶ 7-8.  It is the opinion of Interim Lead Counsel that this settlement is fair and reasonable.  *Id.* ¶ 10.  Two experienced mediators assisted the parties with the settlement negotiations and presided over two mediations:   "This reinforces the non-collusive nature of the settlement."  *Clem*, 2014 WL 1265909, at *3 (citing (*Capsolas v. Pasta Res. Inc.,* No. 10 Civ. 5595, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012)).

### 3.    The Proposed Settlement is Substantively Fair

A proposed settlement is substantively fair, for preliminary approval purposes, if it falls within the "range of possible approval."  *Reade-Alvarez*, 237 F.R.D. at 34.  The settlement here contains a substantial cash payment of $19 million, which is an excellent result for the Settlement Class.

In order to determine whether a proposed class action settlement is substantively fair, reasonable and adequate for purposes of **final approval**, courts in this Circuit may consider the *Grinell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  "[N]ot every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 456 (internal quotation marks and citation omitted).  In determining whether a settlement falls within the "range of possible approval," for purposes of preliminary approval, courts rarely assess the *Grinell* factors, but rather focus on the procedural fairness of the settlement.  *See, e.g.*, *Clem*, 2014 WL 1265909, at *2-4.

Regarding the first factor, "antitrust cases, by their nature, are highly complex."  *Wal-Mart Stores, Inc.*, 396 F.3d at 122.  In the absence of this Settlement, the litigation of this complex case would likely have consumed many more years of Court resources.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class").  The Settlement allows the parties and the Court system to avoid the significant expenses of continued litigation.  The costs of further expert reports and summary judgment motion practice as well as trial and appeals would have been substantial.  The proposed Settlement eliminates the foregoing complexities and substantial expenses.  *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. at 210 ("[I]t may be preferable to take the bird in the hand instead of the prospective flock in the bush." (internal quotation marks omitted)).

The second factor is premature.  The third factor is designed to "assure the Court that counsel for the plaintiffs have weighed their position based on a full consideration of the possibilities facing them."  *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. at 458.  As detailed above, extensive fact discovery and investigation had been completed before the proposed Settlement was reached.

Regarding factors 4, 5 and 6, the "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *Currency Conversion*, 263 F.R.D. at 123.   Continuing this complex litigation would entail a lengthy and highly expensive legal battle involving complex legal and factual issues relating to both liability and damages.   For example, although Plaintiffs allege that Defendants' merger gave them sufficient market power to raise and sustain prices above a competitive level, Defendants vigorously dispute, among other issues, that there is any identifiable market, that the prices are supracompetitive, and that there are any barriers to entry into the alleged market.   Plaintiffs also faced risks in establishing damages.   Defendants have vigorously contested the conclusions of Plaintiffs' damages expert in quantifying the alleged overcharge, and argue that relevant benchmarks show that the prices of the relevant tours have been below the prices that the benchmarks indicate would have existed without the joint venture, and that Plaintiffs' damages expert's model returns false positives.   *See, e.g.*, Defendants' Opposition to Plaintiffs' Motion for Class Certification, Dkt. # 90-1, at 25-26.   Plaintiffs dispute these arguments.

Regarding factor 7, even if Defendants could withstand a greater judgment, this does not undermine the fairness of the Settlement even for final approval.   *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 460 ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate.")

Regarding factors 8 and 9, a $19 million payment is a significant recovery in light of the total projected damages and the risks of litigation.   Illustrative modeling performed for class certification by Plaintiffs' economic expert, Dr. Hal Singer, estimated pre-trebling damages of approximately $29 million for a class period ending shortly before the submission of class certification expert reports (Dkt. # 74, Singer Decl. ¶ 46 & tab. 5); the settlement amount of $19

13

million thus represents a substantial recovery, certainly well within the permitted range even on final approval. *See Grinnell Corp.*, 495 F.2d at 455 & n. 2 (in theory, even a recovery of only a fraction of one percent of the overall damages could be a reasonable and fair settlement). The Settlement is especially fair in the context of this case: the Government Actions against Defendants are ongoing, and the Government Entities may obtain further relief in that case. In addition, any unclaimed funds will not revert to Defendants, but rather will be given to the Government Entities.

For the foregoing reasons, the Settlement Agreement is well within the possible range of final approval as a "fair, reasonable and adequate" resolution of Plaintiffs' claims. *See id.* at 463. The proposed Settlement, if approved, will enable the Class to recover a very significant sum without running the risk that Defendants would prevail at class certification, summary judgment, trial, or in subsequent appeals. Given this uncertainty, "[a] very large bird in the hand of this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

### B.        The Proposed Settlement Class Should Be Certified

The Second Circuit has long recognized the propriety of certifying a class solely for purposes of settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 451. Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205. Conditional certification for settlement purposes only is appropriate to facilitate notice of a preliminarily approved settlement. *E.g.*, *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 939 (10th Cir. 2005) (describing simultaneous preliminary settlement

approval and conditional class certification); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 815 (6th Cir. 2004) (same).

A court may grant certification where, as here, the proposed Settlement Class satisfies the four requirements of Rule 23(a) and at least one subsection of Rule 23(b).  *See Weinberger*, 698 F.2d at 73.  However, the manageability concerns of Rule 23(b)(3) are not at issue.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested . . . .").  The parties have fully briefed Plaintiffs' motion for class certification, and Plaintiffs incorporate their briefing herein.  Dkt. # 71-77, 97.  In support of preliminary approval, Plaintiffs state the following:

### 1.    The Settlement Class Meets the Requirements of Rule 23(a)

#### a.    Ascertainability

Although not mentioned in Rule 23, many courts have held that a certifiable class must be ascertainable—that is, the class's membership must be "defined by identifiable objective criteria."  *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 128 (S.D.N.Y. 2011).  Here, Plaintiffs' proposed Settlement Class is:

> [A]ll persons who, or entities that, purchased Defendants' "hop-on, hop-off" bus tours in New York City from February 1, 2009, until the date of the Preliminary Approval Order (the "Class Period").  Excluded from the Class are Defendants, their present and former parents, subsidiaries, affiliates, and employees.

Carmody Decl., Ex. 1 at ¶ 1(e).  This is an objective definition—it is clear who is in the Class and who is not:  either a Class Member did or did not purchase one of Defendants' hop-on, hop-off New York City bus tours during the relevant time period.

15

b.      Numerosity

Rule 23(a) requires that a class be so numerous that joinder of all members would be "impracticable."   Fed. R. Civ. P. 23(a)(1).   The Second Circuit will generally "find a class sufficiently numerous when it comprises forty or more members."   *In re Indep. Energy Holdings*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002); *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Plaintiffs' expert Dr. Hal Singer estimated that there were approximately 3.9 million Class Members as of the class certification briefing (Dkt. # 74, Singer Decl. ¶ 48 n. 22), a number that will increase as the proposed class period extends through the date of the preliminary approval order.

c.      Commonality

Commonality requires the identification of a common contention, one "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."   *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).   The proof of the elements of Plaintiffs' antitrust claims will require the resolution of many common questions, as discussed in Plaintiffs' briefing in support of class certification.   Dkt. # 72 at pp. 12-19; Dkt. # 97 at pp. 9-15. For example, Plaintiffs allege *per se* horizontal price-fixing, and in cases of *per se* illegal horizontal conspiracies, courts "have consistently held that the very nature of a conspiracy in an antitrust action compels a finding that questions of common questions of fact and law exist."   *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *3 (N.D.Cal. June 5, 2006) (*quoting In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D.Cal. 2005)); *see Newberg* § 3:10 at 278 (in an "antitrust action on behalf of purchasers who have bought the defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged

conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite"). There are also common issues of law and fact relating to market share and barriers to entry, causation and injury, and damages.  *See* Dkt. # 72 at pp. 15-19.

d.  <u>Typicality</u>

Third, Rule 23(a) requires that claims of Class Plaintiffs be typical of the claims of other Class Members.  *See* Fed. R. Civ. P. 23(a)(3).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux*, 987 F.2d at 936-37.  Both Class Plaintiffs present claims that are typical of the class: they alleged that they suffered an injury by paying an overcharge for Defendants' hop-on, hop-off New York City bus tours, just as the rest of the class allegedly did.  *See* Dkt. # 72 at pp. 19-20.

e.  <u>Adequacy</u>

Finally, Rule 23(a) requires that the representative parties "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As the Second Circuit has noted, "adequacy of representation is measured by two standards: "First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another."  *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 142 (2d Cir. 2001).

Both requirements are satisfied here for the Settlement Class.  The Court previously found that Interim Lead Counsel have the requisite qualifications and experience to lead this litigation on behalf the proposed Class, and Plaintiffs' counsel prosecuted the case vigorously, and conducted a thorough examination of the merits before reaching this hard-fought, arm's-

17

length Settlement.  (Dkt. # 36).  Moreover, in reaching the Settlement Agreement, the interests of

all Class Members were adequately protected and there are no conflicts between or among the

named Plaintiffs and other Class Members.  All Class Members share an overriding interest in

obtaining the largest monetary recovery possible from Defendants.  *See In re Global Crossing*

*Sec. & ERISA Litig.*, 225 F.R.D. at 453 (certifying settlement class and finding that "[t]here is no

conflict between the class representatives and the other class members. All share the common

goal of maximizing recovery.").

**2.**      **The Settlement Class Meets the Requirements of Rule 23(b)(3)**

Certification under Rule 23(b)(3) requires a showing that "questions of law or fact

predominate over any questions affecting only individual members," and the class action must be

"superior to other available methods for fairly and efficiently adjudicating the controversy," Fed.

R. Civ. P. 23(b)(3))—two requirements referred to as "predominance" and "superiority."

*Amchem Prods.*, 521 U.S. at 615.  However, the manageability concerns of Rule 23(b)(3) are not

at issue in settlement classes.  *Id.* at 593 ("Whether trial would present intractable management

problems . . . is not a consideration when settlement-only certification is requested . . . .").

a.      <u>Common Questions of Law and Fact Predominate</u>

The predominance requirement "tests whether proposed classes are sufficiently cohesive

to warrant adjudication by representation."  *Id.* at 623-24.  Predominance is clearly met here

given the number of common issues described above and in Plaintiffs' briefing in support of

class certification.  *See id.* at 625 ("Predominance is a test readily met in certain cases alleging . .

. violations of the antitrust laws."); *see also Newberg* § 18.26 ("In antitrust suits, the issues of

conspiracy, monopolization, and conspiracy to monopolize have been viewed as central issues

which satisfy the predominance requirement.").   Not only will common liability issues

predominate, but also Dr. Singer's Declaration in support of class certification presented a

18

sample damages methodology to calculate damages on a classwide basis.  Singer Decl. ¶¶ 31-33;

*see In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 88 (D.

Conn. 2009) ("[O]ne way of demonstrating predominance is to show that there is a common

method for proving that the class plaintiffs paid higher actual prices than in the but-for world,

such as using an econometric regression model incorporating a variety of factors to demonstrate

that a conspiracy variable was at work during the class period . . . .").  Even if there were any

individual issues, the common liability and damages issues would still predominate.  *In re*

*NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996) ("*NASDAQ I*")

("[E]xistence of a conspiracy is the predominant issue in price fixing cases, warranting

certification of the class even where significant individual issues are present.").

b.   <u>A Class Action is Superior</u>

The Court must balance, in terms of fairness and efficiency, the advantages of class

action treatment against alternative available methods of adjudication.  *In re Nigeria Charter*

*Flights Contract Litig.*, 233 F.R.D. 297, 301 (E.D.N.Y. 2006); *see* Fed. R. Civ. P. 23(b)(3)

(listing four considerations relevant to this determination).  The Court needs to consider "the

efficient resolution of the claims or liabilities of many individuals in a single action, as well as

the elimination of repetitious litigation and possibly inconsistent adjudications."  *D'Alauro v. GC*

*Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996).  Here, any interests of Class Members

in individually controlling the prosecution of separate claims are outweighed by the efficiency of

the class mechanism.  *See In re Buspirone Patent Litig.,* 210 F.R.D. at 58 ("The numerous

common issues of fact and law and the difficulty of numerous individual lawsuits indicates that a

class action is superior to other methods for a fair and efficient adjudication of the

controversy."); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d at 249 (certifying a class because

"proceeding forward as a class action for liability is superior and would avoid duplication,

19

unnecessary costs and a wasting of judicial resources"). Further, many of Defendants' arguments on superiority related to the alleged manageability concerns of this litigation—not a factor to consider in settlement classes. *Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested . . . .").

### 3.      Proposed Class Counsel Satisfy Rule 23(g)

Rule 23(g) governs appointment of class counsel. Not only has class counsel vigorously prosecuted this case, class counsel also spent tireless hours achieving this highly favorable Settlement for the Class. Carmody Decl. ¶ 8. Susman Godfrey LLP has significant experience in antitrust litigation and class actions, including settlements thereof, which makes the firm particularly well-suited to serve as Settlement class counsel. *Id.* ¶ 2.

### C.      Notice to the Class

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." For a class certified under Rule 23(b)(3), the notice must meet the additional requirements in Rule 23(c)(2)(B): it must specify (i) the nature of the action, (ii) the definition of the class certified, (iii) the class claims, issues, or defenses, (iv) that a class member may enter an appearance through an attorney if the member so desires, (v) that the court will exclude from the class any member that requests exclusion, (vi) the time and manner for requesting exclusion, and (vii) the binding effect of a judgment on class members. Fed. R. Civ. P. 23(c)(2)(B). The standard for adequacy of a settlement notice ultimately is one of reasonableness. As the Second Circuit has held, "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that

are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.*, 396 F.3d at 113-14 (internal quotations and citations omitted).

The form of notice is "adequate if it may be understood by the average class member." *Newberg* § 11.53. Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem*, 521 at 617. Publication notice is an acceptable method of providing notice where the identity of specific class members is not reasonably available. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citing Manual § 21.311).

As outlined in the attached declaration of Dr. Shannon Wheatman, who has served as a class notice expert in many state and federal class actions, including consumer class actions with millions of purchasers, the notices prepared in this case will effectively communicate the required information to Class Members. Wheatman Decl. ¶¶ 41-45. (Dr. Wheatman was involved in developing illustrative model notices for the Federal Judicial Center, making her particularly well-suited as an expert to develop the notices for use in this matter. *Id.* ¶ 8.) The notices, which are attached as exhibits to Dr. Wheatman's declaration, communicate in plain language the essential elements of the Settlement and the options available to Class Members in connection with the settlement. *Id.* Exs. 3-6.

Dr. Wheatman also opines that the notice plan proposed in this case satisfies the requirements of due process and Rule 23 in providing the best notice practicable to Class Members. *Id.* ¶¶ 2, 14, 20, 46. The notice plan has several elements: (1) direct notice by mail or email to all Class Members who can be identified with reasonable effort (*id.* ¶¶ 12, 21-23); (2) print media publication notice, including publications in *Parade*, *USA Weekend*, *People*, and

*Time* (*id.* ¶¶ 24-29); (3) internet publication notice with an internet advertising campaign, both domestically and internationally, using several internet ad networks as well as banner ads on Facebook (*id.* ¶¶ 30-33); (4) earned media with a globally distributed press release, translated into foreign languages (*id.* ¶¶ 34-35); and (5) a settlement website, toll-free number, and mailing address for Class Members to obtain more information (*id.* ¶¶ 35-37).   Dr. Wheatman states that the notice plan will reach approximately 80% of a target audience of U.S. residents with the demographic characteristics of persons who engaged in sightseeing in New York (*id.* ¶¶ 17, 40), and is the best notice practicable under the circumstances of this case (*id.* ¶¶ 2, 14, 20, 46).

Notice plans with a mix of direct and publication notice following similar procedures for reaching members of a class located both in the U.S. and abroad have been approved by numerous district courts in this Circuit and elsewhere.  *See, e.g., In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, at *2 (E.D.N.Y. Oct. 23, 2012); *Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ 00214, 2010 WL 5187746, at *4-5 (S.D.N.Y. Dec. 6, 2010); *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107-09 (S.D.N.Y. 2007); *In re Imprelis Herbicide Marketing, Sales Practices & Prods. Liab. Litig.*, 296 F.R.D. 351, 363 (E.D. Pa. 2013); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

### D.     The Proposed Distribution Plan is Reasonable

A distribution plan is fair and reasonable as long as it has a "reasonable, rational basis." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002); *accord In re Initial Pub. Offerings Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009).  Because it is impossible in a large class to calculate each member's claim with mathematical precision, courts recognize that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104,

133 (S.D.N.Y. 1997).  A distribution plan that compensates class members based on the type and extent of their injuries is generally considered reasonable.  Here, the distribution will be up to $20 for each class member's ticket, on a *pro rata* basis, with no class members being favored over others.  *See* Long Form Notice, Wheatman Decl., Ex. 6, Question 9.  This represents a fair estimation of the damages suffered by each class member, including treble damages.  The illustrative econometric modeling prepared by plaintiffs' expert, Dr. Hal Singer, analyzed the first round of price increases around the time of the joint venture, and Dr. Singer found an average overcharge of around $5 per ticket.  Singer Decl. ¶¶ 18-20, 27 & tab. 1.  Dr. Singer noted that defendants implemented a second round of price increases in early 2013, which was approximately the same magnitude of the first (that is, another $5 per ticket increase).  *Id.* ¶ 20 n. 6.  A recovery of up to $20 per class member's ticket is therefore a fair result given the average treble actual damages allegedly suffered by each class member.

This type of distribution has frequently been determined to be fair, adequate, and reasonable.  *See In re Vitamins Antitrust Litig.*, 2000 WL 1737867 at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, 2002 WL 31663577 at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to the fairest method of allocating the settlement benefits"); *In re Paine Webber P'ship Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y. 1997) ("pro rata distribution of the Settlement on the basis of Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims").

The proposed distribution plan is recommended by Lead Counsel, which finds it to be fair and reasonable, especially in light of counsel's detailed assessments of the strengths and weaknesses of the claims asserted, the applicable damages, and the likelihood of recovery. Carmody Decl. ¶ 11. Lead Counsel's conclusion that the distribution plan is fair and reasonable is entitled to great weight. *See In re Am. Bank Note Holographics, Inc.* 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"; approving allocation plan and according counsel's opinion "considerable weight"). Accordingly, the distribution plan is fair and reasonable, and should be preliminarily approved.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Class Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement as within the range of fairness, reasonableness and adequacy; (ii) certify the Class and Lead Plaintiffs as Class representatives and appoint Susman Godfrey LLP as Class Counsel for purposes of the Settlement only; (iii) approve the proposed form and manner of notice to putative Class Members; and (iv) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters. The proposed Preliminary Approval Order is attached to Notice of Motion as Exhibit 1.

DATED: May 20, 2014

Respectfully submitted,


    /s/ William Christopher Carmody
William Christopher Carmody (WC8478)
Arun Subramanian (AS2096)
Seth Ard (SA1817)
Mark Howard Hatch-Miller (MH4981)
Megan O'Hara Easley (ME7715)
SUSMAN GODFREY LLP
560 Lexington Avenue, 15th Floor
New York, New York  10022-6828
Phone:  (212) 336-8330
Fax:  (212) 336-8340
Email:  bcarmody@susmangodfrey.com
          asubramanian@susmangodfrey.com
          sard@susmangodfrey.com
          mhatch-miller@susmangodfrey.com
          measley@susmangodfrey.com


Drew D. Hansen (*pro hac vice*)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Phone:  (206) 373-7384
Fax:  (206) 516-3883
Email:  dhansen@susmangodfrey.com

## <u>CERTIFICATE OF SERVICE</u>

On May 20, 2014, I caused copies of the Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Settlement with Defendants to be served on the following counsel via electronic mail:

Michael P.A. Cohen
Paul Hastings LLP
875 15th Street N.W.
Washington, DC 20005
michaelcohen@paulhastings.com

*Attorneys for Defendants Twin America, LLC, CitySights LLC, and City Sights Twin LLC*

Andrew A. Ruffino
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
aruffino@cov.com

Thomas Barnett
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
tbarnett@cov.com

*Attorneys for Defendants Coach USA, Inc. and International Bus Services, Inc.*


DATED:  May 20, 2014
         New York, New York

                                   */s/ Mandi Bruns*                                   
                                   **Mandi Bruns**